UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

COACH, INC. and COACH SERVICES, INC.,

                         Plaintiffs,                 13 Civ. 445

     -against-                            OPINION

ZHEN ZHEN WENG, LIN FAN WENG, and
XIAO FEI LIN, all individually and d/b/a
"WENG'S GIFT SHOP"; "JOHN DOES" 1-10;
And UNKNOWN ENTITIES 1-10,

                         Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        GIBNEY, ANTHONY & FLAHERTY LLP
        665 Fifth Avenue
        New York, NY 10022
        By:  Brian W. Brokate, Esq.
        John Macaluso, Esq.
        Waltyer-Michael Lee, Esq.

        Attorneys for Defendants

        SONG CHEN
        KEVIN KERVENT TUNG, P.C.
        136-20 38TH Avenue, Suite 3D
        Flushing, NY 11354


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/9/14

**Sweet, D.J.**

The plaintiffs Coach, Inc. and Coach Services, Inc. (collectively "Coach" or the "Plaintiffs") have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for Summary Judgment against defendants Zhen Zhen Weng ("Zhen Weng"), Lin Fan Weng ("Lin Weng") (collectively, the "Wengs") and Xiao Fei Lin ("Xiao Lin"), all individually and d/b/a "Weng's Gift Shop" (collectively referred to as "Defendants"). Defendant Xiao Lin has cross-moved to dismiss the complaint against her. Plaintiffs have also moved to strike certain documents relating to Defendant Xiao Lin's reply for her motion to dismiss. Based on the facts and circumstances set forth below, the motion of the Plaintiffs is granted in part and denied in part and judgment in their favor will be entered on notice, and the cross-motion of Xiao Lin is denied. Plaintiffs' motion to strike certain documents is dismissed as moot.

**Prior Proceedings**

In 2011, Coach first received information that Defendants were selling, offering for sale, and distributing

1

merchandise bearing counterfeits and infringements of several trademarks owned by Coach (the "Coach Registered Trademarks"). Later that year, Coach received information that Defendants had begun selling, offering for sale, and distributing counterfeit Coach Merchandise from a retail location at 185 Hester Street, New York, NY 10013 known as "Weng's Gift Shop" ("Defendants' Store").

Through its subsequent investigations, Coach learned that since at least 2010, Defendants have distributed counterfeit Coach Merchandise as set forth below:

| DATE | ACTION | DEFENDANT ARRESTED OR SERVED | QUANTITY OF COUNTERFEIT COACH MERCHANDISE SEIZED OR VOLUNTARILY SURRENDERED |
|---|---|---|---|
| March 1, 2010 | Arrest | Lin Weng Zhen Weng | 11 |
| June 8, 2010 | Arrest | Zhen Weng | 30 |
| July 11, 2010 | Arrest | Lin Weng | --- |
| February 19, 2011 | Cease and Desist letter served on behalf of Coach | | |
| April 20, 2011 | Seizure executed on behalf of another luxury good company | Lin Weng | 103 |
| May 24, 2011 | Preliminary Injunction issued | Lin Weng, Defendants' Store | --- |
| July 1, 2011 | Notice to Cure from Landlord | Defendants | --- |
| July 21, 2011 | Cease and | Lin Weng | 97 |

| | Desist letter served on behalf of Coach | | |
|---|---|---|---|
| August 25, 2011 | Seizure executed on behalf of another luxury good company | Zhen Weng | --- |
| September 6, 2011 | Preliminary Injunction issued | Zhen Weng Defendants' Store | --- |
| October 11, 2011 | Seizure executed on behalf of another luxury good company | Lin Weng | --- |
| October 18, 2011 | Preliminary Injunction issued | Lin Weng, Defendants' Store | --- |
| October 23, 2011 | Arrest | Lin Weng, Defendants' Store | --- |
| November 13, 2011 | Arrest | Lin Weng Zhen Weng Xiao Lin | 111 |
| April 21, 2012 | Cease and Desist letter served on behalf of Coach | Lin Weng | 135 |
| October 25, 2012 | Notice to Cure from Landlord | Defendants | --- |
| November 13, 2012 | Notice to Terminate from Landlord | Defendants | --- |
| November 20, 2012 | Seizure executed on behalf of another luxury good company | Defendants | --- |
| November 27, 2012 | Preliminary Injunction issued | Defendants' Store | --- |
| December 12, 2012 | Covert Purchase on behalf of Coach | Defendants' Store | 1 |
| December 15, 2012 | Arrest | Lin Weng Zhen Weng Xiao Lin | 90 |

On January 18, 2013, as a result of Defendants'
activities, Coach filed the instant complaint (the "Complaint")
alleging the distribution of merchandise bearing counterfeits
and infringements of the Coach Registered Trademarks and two
trademark counterfeiting claims under 15 U.S.C. § 1114.

On April 1, 2013, Coach served its First Request for
the Production of Documents and Things and Coach's First Set of
Interrogatories (hereinafter referred to as "Coach's Discovery
Requests"). Defendants failed to timely respond to Coach's
Discovery Requests and to produce documents relevant to this
matter. Defendants produced only five (5) pages of documents
which consisted of a business certificate and the lease for
Defendants' Store.

After discovery, the instant motions were heard and
marked fully submitted on January 29, 2014.

**The Facts**

The facts are set forth in the Plaintiffs' Statement
of Undisputed Material Facts, the Defendants' Response to
Plaintiffs' Rule 56.1 Statement, Defendants' Statement of
Undisputed Material Facts, and Plaintiffs' Counterstatement to

Defendants' Statement of Undisputed Material Facts. The facts are not disputed except as noted below.

Coach, Inc. is a corporation duly organized and existing under the laws of the state of Maryland. Its corporate headquarters is located at 516 West 34th Street, New York, NY 10001. Coach Services, Inc. is a corporation and wholly owned subsidiary of Coach, Inc. existing under the laws of the state of Maryland. Its corporate headquarters is located at 1 Coach Way, Jacksonville, FL 32218.

Defendant Zhen Weng is a resident of the State of New York, residing at 56-27 Fresh Meadow Lane, Fresh Meadows, NY 11365. Defendant Lin Weng is a resident of the State of New York, residing at 12-11 116th Street, College Point, NY 11356. Defendant Xiao Lin is a resident of the State of New York, residing at 12-11 116th Street, College Point, NY 11356.

Defendants are the owners of "Weng's Gift Shop," located at 185 Hester Street, New York, NY 10013. According to Plaintiffs, "Weng's Gift Shop" is not an entity authorized to do business in New York. According to Defendants, "Weng's Gift Shop" was licensed to do business on October 27, 2011.

Coach is engaged in the business of manufacturing, marketing, selling, and distributing throughout the world merchandise including, but not limited to, handbags, wallets, jewelry, watches, shoes, eyewear, and fragrances. Coach Services, Inc. is the owner of all of Coach's United States federal trademark registrations (the "Coach Registered Trademarks"). All of the Coach Registered Trademarks are valid, subsisting and in full force and effect. Coach was founded in 1941 and registered its first trademark in June, 1963. Since then, Coach has used the Coach Registered Trademarks, among other things, in connection with the advertisement and sale of its products.

Coach invests substantial time, money, and other resources developing, advertising, and otherwise promoting the Coach Registered Trademarks. Coach has extensively used, advertised, and promoted the Coach Registered Trademarks in the United States in association with the sale of high quality merchandise including, but not limited to, high quality handbags, wallets, jewelry, shoes, eyewear, and fragrances, and has carefully monitored and policed the use of the Coach Registered Trademarks. As a result of Coach's efforts, members of the consuming public readily identify merchandise bearing the Coach Registered Trademarks as being high quality merchandise

6

sponsored and approved by Coach. The Coach Registered Trademarks have not been assigned or licensed to any of the Defendants in this matter.

In 2011, Coach first received information that Defendants were selling, offering for sale, and distributing merchandise bearing counterfeits and infringements of the Coach Registered Trademarks (the "Counterfeit Coach Merchandise"). Later that year, Coach received information that Defendants had begun selling, offering for sale, and distributing Counterfeit Coach Merchandise from Defendants' Store, located at 185 Hester Street, New York, NY 10013.

Through its subsequent investigations, Coach then learned that since at least 2010, Defendants have distributed Counterfeit Coach Merchandise. On March 1, 2010, the Wengs were arrested and charged with Trademark Counterfeiting in the Third Degree, a class "A" misdemeanor. Approximately eleven (11) pieces of Counterfeit Coach Merchandise were seized from this arrest. On June 8, 2010, Zhen Weng was arrested and charged with Trademark Counterfeiting in the Third Degree, a class "A" misdemeanor. Approximately thirty (30) pieces of Counterfeit Coach Merchandise were seized from this arrest. On July 11, 2010, Lin Weng was arrested and charged with Trademark

Counterfeiting in the Third Degree, a class "A" misdemeanor. On February 19, 2011, Lin Weng was personally served by Coach's agent with a cease and desist letter at 197 Hester Street, Apt. #43, New York, NY 10013 in connection with Defendants' illegal activities. At this time, Lin Weng voluntarily surrendered approximately one hundred three (103) pieces of Counterfeit Coach Merchandise. On April 20, 2011, counsel to Coach, on behalf of another trademark owner, executed a Federal seizure order in the case *Prada S.A. v. Various John Does, et. al.*, Case No. 08 CV 00944 (TPG) (the "Prada Lawsuit"), a case involving trademark counterfeiting and trademark infringement, at Defendants' Store and personally served its representative with process in connection with a civil suit based on this illegal activity. On that date, a substantial amount of counterfeit merchandise was seized.

On May 24, 2011, a preliminary injunction enjoining further counterfeiting and trademark infringement was issued in the Prada Lawsuit against Lin Weng and Defendants' Store.

On July 1, 2011, as a result of Defendants' counterfeiting and trademark infringement, Defendants' landlord sent Defendants a three (3) day Notice to Cure.

On July 21, 2011, Lin Weng was served by Coach's agent with a second cease and desist letter at Defendants' Store in connection with Defendants' sale and offer for sale of Counterfeit Coach Merchandise from a showroom at the rear of the store. At this time, Lin Weng voluntarily surrendered approximately ninety-seven (97) pieces of Counterfeit Coach Merchandise.

On August 25, 2011, counsel for Coach executed a second Federal seizure order in the Prada Lawsuit at Defendants' Store and served its representative with process in connection with a civil suit based on this illegal activity. On that date, a substantial amount of counterfeit merchandise was seized.

On September 6, 2011, a second preliminary injunction enjoining further counterfeiting and trademark infringement was issued in the Prada Lawsuit against Zhen Weng and Defendants' Store. On October 11, 2011, Coach's counsel executed a third Federal seizure order in the Prada Lawsuit at Defendants' Store and personally served its representative with process in connection with a civil suit based on this illegal activity. On that date, a substantial amount of counterfeit merchandise was seized. On October 18, 2011, a third preliminary injunction enjoining further counterfeiting and trademark infringement was

issued in the Prada Lawsuit against Lin Weng and Defendants'
Store. On October 23, 2011, Lin Weng and Zhen Weng were arrested
at Defendants' Store and charged with Trademark Counterfeiting
in the Second Degree, a class "E" felony, and Forgery in the
Third Degree, a class "A" misdemeanor. Approximately one hundred
eleven (111) pieces of Counterfeit Coach Merchandise were
seized. On November 13, 2011, Lin Weng, Zhen Weng, and Xiao Lin
were arrested at Defendants' Store and charged with Trademark
Counterfeiting in the Second Degree, a class "E" felony, and
Forgery in the Third Degree, a class "A" misdemeanor.
Approximately one-hundred eleven (111) pieces of Counterfeit
Coach Merchandise were seized. On April 21, 2012, Lin Weng was
served by Coach's agent with a third cease and desist letter at
Defendants' Store in connection with Defendants' sale and offer
for sale of Counterfeit Coach Merchandise from a showroom at the
rear of the store. At this time, Lin Weng voluntarily
surrendered approximately one hundred thirty-five (135) pieces
of Counterfeit Coach Merchandise.

On October 25, 2012, due to their continued
counterfeiting and trademark infringement, Defendants' landlord
served on Defendants a ten (10) day Notice to Cure. This notice
specifically references Defendants' sales of Counterfeit Coach
Merchandise. On November 13, 2012, due to their continued

counterfeiting and trademark infringement, Defendants' landlord
served on Defendants a fifteen (15) day Notice to Terminate.
This notice references Defendants' sales of Counterfeit Coach
Merchandise.

On November, 20, 2012, Coach's counsel executed a
fourth Federal seizure order in the Prada Lawsuit at Defendant's
Store and personally served its representative with process in
connection with a civil suit based on this illegal activity. On
that date, a substantial amount of counterfeit merchandise was
seized.

On November 27, 2012, a fourth preliminary injunction
enjoining further counterfeiting and trademark infringement was
issued in the Prada Lawsuit against "John Doe" defendants at
Defendants' Store.

On December 12, 2012, Coach's agent made a covert
purchase of one (1) piece of Counterfeit Coach Merchandise at
Defendants' Store.

On December 15, 2012, Lin Weng, Zhen Weng, and Xiao
Lin were arrested at Defendants' Store and charged with
Trademark Counterfeiting in the Third Degree, a class "A"

11

misdemeanor. Approximately ninety (90) pieces of Counterfeit
Coach Merchandise were seized. Defendants' understanding of
these arrests is set forth below.

On January 18, 2013, Coach filed the Complaint against
Defendants in connection with the distribution of Counterfeit
Coach Merchandise.

On January 25, 2013, Coach's counsel executed a fifth
Federal seizure order in the Prada Lawsuit at Defendants' Store
and served its representative with process in connection with
the Prada Lawsuit. On that date, a substantial amount of
counterfeit merchandise was seized.

On February 13, 2013, a fifth preliminary injunction
enjoining further counterfeiting and trademark infringement was
issued in the Prada Lawsuit against "John Doe" defendants at
Defendants' Store.

During the course of this litigation, despite specific
requests, Defendants have never produced any documents
concerning their arrests nor their purchases and sales of
Counterfeit Coach Merchandise.

12

Defendants have asserted that they never kept records of sales at Defendants' Store and that the precise figures provided in response to Coach's interrogatories were substantiated only by Defendants' memory.

Defendants did not respond to Coach's Second Set of Interrogatories and failed to provide any documentation relating to their arrests.

While the District Attorney was unable to produce documentation for each and every arrest, the documents produced indicate that Defendants had been arrested numerous times for the same conduct that forms the basis of this action and charged with Trademark Counterfeiting.

Prior to opening Defendants' Store, Zhen Weng worked a series of odd jobs making a maximum of $60 per day.

From April 2011 through April 2013, while Defendants' Store was open, Zhen Weng's only source of income was from working at Defendants' Store and rent collected from her in-laws with whom she lives.

13

In 2011, Zhen Weng and her husband claim to have a joint income of just over $18,000. In 2012, Zhen Weng and her husband claim to have a joint income of just over $20,000.

In 2007, Zhen Weng and her husband purchased a home located at 5627 Fresh Meadow Lane, Fresh Meadows, NY 11365 for $835,000 with a mortgage from Washington Mutual Bank in the amount of $400,000. Her monthly mortgage payment is just over $4,000.

When Lin Weng arrived in the United States in 2008, he worked at his cousin's store selling sunglasses. After that, he delivered handbags for a friend on Canal Street until April 2011 when Defendants' Store was opened.

Xiao Lin's annual income for 2011 and 2012 was only a few thousand dollars. The most money she has ever made in one year is $10,000.

At the end of 2009, Lin Weng and Xiao Lin purchased a home located at 1211 116th Street, College Point, NY 11356 for $670,000 with no mortgage.

14

Defendants denied living at their current addresses in their Answer to the Complaint but later admitted to living at these addresses both currently and at the time they filed their Answer.

The rent for Defendants' Store was initially $5,000 per month but was subsequently reduced to $4,500. On top of rent, Defendants also had to pay for insurance, electricity, and water. Electricity ranged from approximately $200 to $300 per month, and insurance costs $850 per year. All expenses for Defendants' Store, including rent, electricity, insurance, and water, were paid for in cash.

Lin Weng and Xiao Lin have never filed personal income taxes. Defendants did not charge sales tax at Defendants' Store.

According to Plaintiffs, Defendants concede that they purchased and sold Counterfeit Coach Merchandise and were able to provide specific dates as well as quantities sold and purchased in their response to Coach's interrogatories.

Defendants concede that they had records of their sales of Counterfeit Coach Merchandise, but during the course of this litigation, these records were thrown away. Defendants

threw away invoices and receipts evidencing purchase dates, quantities purchased, and the unit and total price paid after Defendants' Store closed on April 15, 2013.

Defendants concede that they have been arrested on many occasions but claim that such arrests were not for distributing Counterfeit Coach Merchandise but for operating without a business license. Lin Weng has been arrested at least seven (7) times. Zhen Weng has been arrested at least eight (8) times. Xiao Lin has been arrested anywhere from six (6) to twenty (20) times and admits to 2 arrests at Defendants' Store.

Defendants concede being arrested numerous times in connection with Defendants' Store and in connection with "watching" or selling handbags or other merchandise at other Chinatown locations.

Defendants Lin Weng and Zhen Weng were the operators and owners of "Weng's Gift Shop".

Xiao Lin helped Lin Weng and Zhen Weng by occasionally working in Defendants' Store where she would make sales to and accept money from customers.

Lin Weng has at times affixed Coach labels to handbags sold at Defendants' Store.

Defendants installed two (2) walls in the Defendants' Store, creating a back room. The door leading to the back room had no door knob and could only be unlocked with a remote control. Defendants displayed and sold Coach handbags in the back room of Defendants' Store. Products were seized from the back room and the showroom.

Lin Weng purchased Counterfeit Coach Merchandise from a supplier named "Cai" and continued purchasing merchandise from "Cai" even after receiving a cease and desist letter. At one point, Lin Weng stopped purchasing merchandise from "Cai" because her product was "problematic." "Cai" herself even admitted that her product was "problematic." Nonetheless, after a few months, Lin Weng resumed purchasing product from "Cai."

In total, approximately six hundred eighty-nine (689) pieces of Counterfeit Coach Merchandise have been seized from, purchased from, and voluntarily surrendered by Defendants.

According to Plaintiffs, Defendants have been notified of their distribution of counterfeit merchandise, including the Counterfeit Coach Merchandise, in the following ways:

(a)  Lin Weng personally received three (3) cease and desist letters demanding that he and Defendants' Store stop the sale of Counterfeit Coach Merchandise.

(b)  Defendants received three (3) notices from their landlord at Defendants' Store concerning their illegal counterfeiting activities.

(c)  Defendants were arrested at least a combined eight (8) times for trademark counterfeiting at Defendants' Store and were arrested additional tunes for the same illegal conduct at other locations.

(d)  At least five (5) civil seizures of counterfeit merchandise took place at Defendants' Store.

(e)  Two (2) criminal enforcement actions took place at Defendants' Store on behalf of Coach.

(f)   On at least three (3) occasions, Defendants
voluntarily surrendered Counterfeit Coach Merchandise.

(g)   Defendants are subject to at least five (5)
preliminary injunctions enjoining their trademark
infringement and trademark counterfeiting on behalf of
another brand.

A Coach representative has examined a sample and
reviewed photographs of the Counterfeit Coach Merchandise
purchased from, seized from, and surrendered by Defendants and
determined that none of its parts are of genuine Coach origin.
The merchandise, which includes handbags, wallets, and belts,
contains numerous counterfeits and infringements of the Coach
Registered Trademarks and is of very poor quality. The
Counterfeit Coach Merchandise contains marks that appear
substantially indistinguishable, if not identical, to the Coach
Registered Trademarks.

The following Coach Registered Trademarks were
infringed by Defendants through the sale and offer for sale of
the Counterfeit Coach Merchandise:

| Trademark | Reg. No. | Date | Description of Goods |
|---|---|---|---|
| COACH | 1,071,000 | 8/09/1977 | Women's Handbags and carry-on luggage; Men's and women's belts. |
| COACH | 1,070,999 | 8/09/1977 | Women's handbags, portfolios, toiletry travel kits and carry-on luggage pieces. |
| COACH COACH | 1,309,779 | 12/18/1984 | Eyeglass Cases; Checkbook Cases and Pocket Secretaries; Leather Goods-Namely, Wallets, Purses, Key Cases, Cosmetic Cases (Sold Empty), Business Card Cases, Credit Card Cases, Passport Holders, Clutches, Tote Bags, and Shoulder Bags. |
| COACH | 2,045,676 | 3/18/1997 | Key fobs of metal and money clips; cellular phone cases, computer cases and computer accessory cases; Desk pads,[ desk file trays, memo boxes, pencil cups], business card holders, paperweights, planning diaries, daily business planners, checkbook covers, passport covers; attaché cases, briefcases, briefcase-type portfolios, satchels, duffel bags, men's clutches, coin cases, waist pouches, [water bottle carriers,] passport covers, and identification tags for luggage, luggage, garment bags, backpacks; Picture frames, jewelry cases not of precious metal; Hats, caps and gloves. |
|  | 2,088,707 | 8/19/1997 | Cellular phone cases, computer cases and computer accessory cases; attaché cases, briefcases, briefcase-type portfolios, handbags, satchels, tote bags, duffel bags, luggage, garment bags for travel, back packs, tie cases, men's clutches, cosmetic bags sold |

20

| | | | |
|---|---|---|---|
| | | | empty, toiletry cases sold empty, water bottle carriers and waist pouches; men's and women's belts. |
| COACH<br><br>COACH | 2,088,706 | 9/19/1997 | Key fobs of metal, metal money clips; eyeglass cases, cellular phone cases, computer cases and computer accessory cases; desk pads, desk file trays, memo boxes, pencil cups, business card holders, paperweights, planning diaries, daily business planners, checkbook covers; attaché cases, briefcases, satchels, tote bags, duffle bags, key cases and leather key fobs, men's clutches, coin cases, credit card cases, waist pouches |
| COACH<br><br>COACH | 2,231,001 | 3/9/1999 | Clothing for men, women and children, namely, coats, jackets, vests, shirts, overcoats, raincoats, socks, scarves, ties, suspenders, shoes, slippers, and belts. |
| CC CC CC CC | 2,592,963 | 7/9/2002 | Clothing, namely, Scarves, Ties, Gloves, Belts, Caps, Hats, Shoes, [Slippers,] Coats, Jackets [and Suspenders]. |
| CC CC CC CC | 2,626,565 | 9/24/2002 | Handbags, Purses, Clutches, Shoulder Bags, Portfolios, Tote bags, Waist pouches, Backpacks, Cosmetic cases sold empty, Toiletry cases sold empty, Briefcases, Luggage, Garment bags, Billfolds, Wallets, Key cases, Business card cases, credit card cases, Passport holders, Identification cases, tie cases and coin pouches. |
| CC | 2,832,589 | 4/13/2004 | Candles; metal key fobs; sunglasses and eyeglass cases; watches and watch straps; jewelry, namely, necklaces, bracelets, earrings, rings; diaries and planning diaries made of leather; leather key fobs, umbrellas, dog and cat collars and leashes; clothing, namely, skirts and pants, and dogs coats. |

| | 3,012,585 | 11/8/2005 | Handbags, Purses, Clutches, Shoulder Bags, Tote Bags, Waist Pouches, Cosmetic Cases Sold Empty, Toiletry Cases Sold Empty, Billfolds, Wallets, Key Cases, Business Card cases, Credit card Cases, Passport Holders, Identification Cases, Key Fobs, Coin Pouches and Umbrellas; Fabrics for use in the manufacture of clothing, shoes and handbags; Clothing, namely, Scarves, Hats, Caps and Shoes. |
|---|---|---|---|
| **C** | | | |
| **COACH** | 3,338,048 | 11/20/2007 | Backpacks; Billfolds; Clutch purses; Cosmetic cases sold empty; Garment bags for travel; Handbags; Key cases; Luggage; Name card cases; Purses; Shoulder bags; Toiletry cases sold empty; Tote bags; Wallets. |
| **COACH LEATHERWARE EST. 1941** | 3,441,671 | 6/3/2008 | Eyeglasses; sunglasses; Jewelry; watches; Credit card cases; garment bags for travel; handbags; leather cases; leather key cases; purses; traveling bags; umbrellas; wallets; Coats; footwear; hats; jackets; shoes. |
| **CC** | 3,696,470 | 10/13/09 | Backpacks; Billfolds; Clutch purses; Cosmetic cases sold empty; Garment bags for travel; Handbags; Key cases; Luggage; Name card cases; Purses; Shoulder bags; Toiletry cases sold empty; Tote bags; Wallets. Business card cases; Credit card cases; Coin purses; Umbrellas. Fabrics for the manufacture of clothing, shoes and handbags. Belts made of leather; Headgear, namely, caps and hats; Coats; Gloves; Jackets; Overcoats; Raincoats; Scarves; Shoes; Slippers; Ties |

Coach contends that Defendants have infringed fourteen (14) trademarks on six (6) types of goods for a total of twenty-four (24) separate infringements through the advertising, distributing, offering for sale, and selling of Counterfeit Coach Merchandise.

The Defendants, in support of the Defendants' Statement of Material Facts and in support of their opposition to Coach's Motion, have submitted documents entitled "Certification of Lin Fan Weng", "Certification of Zhen Zhen Weng", and "Certification of Xiao Fei Lin" (the "Certifications") as well as the "Declaration of Lin Fan Weng", "Declaration of Zhen Zhen Weng", and "Declaration of Xiao Fei Lin" (the "Declarations"). The Certifications contain the following recitals at the signature pages:

> I certify that the foregoing Certification is true to my knowledge except as to matter therein stated to be alleged on information and belief and as to those matters I believe it to be true. I am aware that if any of the foregoing statements made by me are false, I am subject to punishment.

The Declarations do not contain any recitals.

The Certifications and Declarations are problematic. 28 U.S.C. § 1746 allows a written unsworn declaration or statement to substitute for an affidavit, *see* 28 U.S.C. § 1746; Fed. R. Civ. P. 56, and the Declarations do not comply with the statutory requirements of 28 U.S.C. § 1746. The Declarations are thus not admissible. While the Certifications do substantially comply with the statutory requirements of § 1746, *see Tackman v. Goord*, 99-CV-0438A(F), 2005 WL 2347111 (W.D.N.Y. Sept. 26, 2005) ("A writing that does not contain the exact language of 28 U.S.C. § 1746 will not be disregarded provided 'it substantially complies with these statutory requirements, which is all that this Section [1746] requires.'" (quoting *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 & n.2 (2d Cir. 1999))), the Defendants have stated that they do not understand English, "Certification of Lin Fan Weng" at ¶ 4; "Certification of Zhen Zhen Weng" at ¶¶ 5-7; and "Certification of Xiao Fei Lin" at ¶ 8. The Certifications are in English and no translator's certificate has been submitted. Courts outside of this district have found such documents, if they comply with § 1746, are admissible, with any arguments regarding translation going towards their weight. *See Matsuda v. Wada*, 101 F. Supp. 2d 1315, 1323 (D. Haw. 1999); *Collazos-Cruz v. United States*, 1997 WL 377037, *3 (6th Cir. July 3, 1997). Likewise, the

Certifications are admissible here, but their probative value are adjusted accordingly.

The Certifications provide the following information:

Defendant Zhen Weng, and her younger brother, Defendant Lin Weng, were born and grew up in a rural area near the City of Wen Zhou, Zhe Jiang Province, China. Before they immigrated into the United States, Zhen Weng finished her first year of junior high school and Lin Weng received senior high-school education.

After their immigration into the United States, Lin Weng briefly studied English for about 6 months, and Zhen Weng attended a high school for only about two months. Later, she enrolled in a part-time English language program for about two years. Because her English skills had not improved significantly, she was unable to continue her high school education. The Wengs can barely speak English and cannot read English at all.

The Wengs used to take all kinds of part-time jobs and watched store or street stalls for others. At one point, Zhen

Weng assembled clothes for clothing manufacturers. Lin Weng also sold sunglasses for a brief period of one to two months.

With financial support from their family, relatives, and friends in China and the United States, in or about October, 2007, Zhen Weng and her husband purchased a home in Fresh Meadows, New York, and in or about December 2009, Lin Weng and Xiao Lin purchased a home without mortgage in College Point, New York.

In 2011, the Wengs decided to start their own business selling handbags, wallets, and key rings. In or about March, 2011, they leased Defendants' Store, located at 185 Hester Street, New York, New York with a showroom, kitchen, and storage room, and purchased handbags, wallets, and key rings for sale.

Because of the small size of the Wengs' business, the Wengs never promoted any sales through advertisement, did not employ websites to sell merchandise, and did not conduct interstate sales of merchandise. Defendants did not ship or deliver merchandise to others. All sales were conducted in the store.

According to the Defendants, because they are from a rural area of a foreign country without Western education, the Wengs do not understand the concept of a trademark or brand, did not know about Coach or other brands in the fashion industry, could not recognize the mark of Coach or other brands in the fashion industry, and did not know what the word "Coach" meant. According to the Defendants, they believed there was no differences between handbags except for style and design.

According to the Defendants, during the operation of Defendants' Store, a middle-aged man and his assistant would often come to the store to check the merchandise. The Wengs did not know who they were. In or about February, 2011, when Lin Weng was storing some goods owned by a friend in the Defendants' Store, the middle-aged man and his assistants came into the store with a gun. According to the Defendants, the man waived his gun and took away merchandise from the Defendants' Store. Lin Weng states that he was fearful and immediately called his friend to ask him to call the police. According to the Defendants, Lin Weng's friend told him that he would deal with the situation. The Plaintiffs deny that any of its employees, agents, or anyone on its behalf waived a gun or threatened the Defendants.

According to the Defendants, when the middle-aged man and his assistants came to Wengs' Store to check or take away merchandise in the Defendants' Store, the Wengs believed that they could not say no and did not know what the man was saying to them. Based on their understanding, the man and his assistant claimed that the merchandise in the Defendants' Store belonged to them. Defendants did not know how many items of merchandise were taken away. At one point, Lin Weng was requested to sign some documents written in English, with the documents subsequently taken away. According to Defendants, the documents signed by Lin Weng were the cease and desist letters with voluntary surrender agreements and the people who seized the merchandise worked for Coach. The Wengs did not make any reports to the police because they were worried about possible repercussions. Moreover, because the Wengs had not obtained a business license for their store, they thought that making a report to the police might also cause problems for their business.

According to Defendants, the police arrested Defendants at least once in the Defendants' Store; they were subsequently brought to Criminal Court and were represented by a public defender. No interpreter was available to translate for the Defendants in several of their appearances in Criminal

Court. In other appearances, the interpreter told the
Defendants' to go home after the Judge's ruling. According to
Defendants, their criminal cases were either directly dismissed
for lack of evidence or after paying about $100.00 for court
costs.

According to Defendants, in or about October 2011, the
Wengs were arrested for the first time after they started to
sell merchandise. They were told that the reason for their
arrest was that they did not have a business license to sell the
merchandise sold in the Defendants' Store. Thereafter, the Wengs
applied for a business license.

According to Defendants, in or about November 2011,
the Wengs were arrested again because they lacked a business
license. Thereafter, they received a business license from an
accountant who applied for it on their behalf. The business
license was approved on or about October 27, 2011.

According to Defendants, the Wengs did not know their
business could infringe upon Coach's trademark until they were
notified by their attorney after they received the Complaint.
The Plaintiffs deny that the Defendants lacked knowledge and

contend that the Defendants were informed that their acts were illegal.

According to Defendants, the landlord of Defendants' Store had no knowledge that the merchandise sold in the shop were Counterfeit Coach Merchandise. Coach has previously brought a proceeding against the landlord in which the landlord defaulted. When Coach informed the landlord of its default, it requested the landlord evict the Defendants' to shut down their business in exchange for Coach's consent to abandon the default judgment against the landlord. The landlord, under Coach's pressure and direction, prepared eviction notices alleging that Defendants' Store was selling Counterfeit Coach Merchandise.

In or about April, 2013, the Wengs, upon learning that their business might infringe upon Coach's trademark and because their business was performing poorly after Coach's seizure of their merchandise and attempted eviction by their landlord, ceased their business, closed their shop, and moved out the Defendants' Store. Defendants are no longer engaged in the business of selling merchandise.

The Wengs indicated that the merchandise which was later seized by the police or Coach were supplied by a person

named Ms. A Cai. The Defendants' Store acquired approximately 660 pieces of merchandise from A Cai. Among the 660 pieces of merchandise, approximately 423 pieces were seized by the police or Coach and approximately 237 pieces were sold to customers. According to Defendants, assuming all of the 660 pieces of merchandise bore Coach trademarks and all of them were counterfeit products, Defendants contend that they could have earned a profit of $2,370.00 at most because they received only a $10.00 profit per sale of their most profitable merchandise, the handbag.

According to Defendants, the pieces of merchandise acquired from A Cai are as follows:

| Date (on or about) | Pieces (660 in total) | Goods |
|---|---|---|
| 6/28/2011 | 110 | Handbag, wallet, and crossbody bag |
| 7/12/2011 | 10 | Handbag |
| 8/3/2011 | 120 | Handbag, wallet, and crossbody bag |
| 8/18/2011 | 15 | Handbag and wallet |
| 9/2/2011 | 12 | Handbag, wallet, and crossbody bag |
| 9/202011 | 10 | Handbag and crossbody bag |
| 10/7/2011 | 12 | Handbag and wallet |
| 10/25/2011 | 12 | Handbag and crossbody bag |
| 11/12/2011 | 10 | Handbag and wallet |
| 2/2/2012 | 140 | Handbag, wallet, crossbody bag, and key ring |
| 2/18/2012 | 12 | Handbag and crossbody bag |
| 3/2/2012 | 10 | Handbag and wallet |
| 3/17/2012 | 15 | Handbag, wallet, and crossbody bag |
| 4/3/2012 | 15 | Handbag and wallet |
| 4/18/2012 | 10 | Handbag and wallet |

| 10/28/2012 | 110 | Handbag, wallet, and crossbody bag |
| 11/12/2012 | 12 | Handbag and crossbody bag |
| 11/27/2012 | 15 | Handbag, wallet, and crossbody bag |
| 12/12/2012 | 12 | Handbag and crossbody bag |

According to Defendants, Ms. A Cai did not provide any receipts to the Wengs. The Wengs placed receipts of other merchandise in the kitchen drawer in the Defendants' Store. The Wengs threw away the receipts every few months when the drawer was full.

Although the Wengs did not keep records of their purchases or sales of merchandise, they admit to the date and quantity of each purchase shown in the above chart. They also admit that the chart may not be 100% accurate, but contend that the above chart, based on Lin Weng's recollection, is reliable. Lin Weng contends that he remembers the four big purchases and that about every two weeks he bought 10 plus pieces of merchandise.

Xiao Lin is the Wengs' mother. According to Defendants, she played no role in the Wengs' business of selling merchandise, never contributed any money to the Defendants' Store, did not receive or share profits of the store with the Wengs, did not manage or control the store, and was not paid by

32

the Wengs. According to the Plaintiffs, Xiao Lin was arrested
for her conduct at the Defendants' Store.

According to the Defendants, Xiao Lin did not
frequently go to the store because she had a job as a babysitter
and also spent significant time taking care of her husband until
he passed away in August 2011. She only occasionally stopped by
the store to bring some food to the Weng's. According to the
Defendants, Xiao Lin would watch the Defendants' Store only when
both her son and daughter were unavailable, such as when they
ate food or went to use the restroom.

According to the Defendants, when Xiao Lin watched the
store she did so without actively selling merchandise. She would
not negotiate prices with potential customers. If a customer
made a purchase and gave her money according to the price tag on
the merchandise, she would accept the money and give the money
to her son or daughter when they came back. She rarely
encountered this situation because she did not frequently go to
the Defendants' Store.

According to Defendants, Xiao Lin received three
grades of primary-school education in China and does not speak
or understand English. She has no knowledge about the Coach

trademark and cannot recognize the Coach trademark. Xiao Lin's arrests occurred when she was with her son and daughter at the Defendants' Store. According to Defendants, Xiao Lin does not know what charges were brought against her from these arrests, but the Criminal Court dismissed all charges against her.

**The Applicable Standard**

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *Westinghouse Elec. Corp. v. N.Y. City Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting *Anderson*, 477 U.S. at 249. Moreover, if the evidence for the nonmoving party is a mere scintilla or "not significantly probative," the court

may grant summary judgment. *Anderson*, 477 U.S. at 249-50. A fact is "material" only if it will affect the outcome of the suit under applicable law, and such facts "properly preclude the entry of summary judgment." *Id.* at 248. Disputes over irrelevant facts will not preclude summary judgment. *Id.* The goal is to "isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

"It is ordinarily sufficient for the movant to point to a lack of evidence . . . on an essential element of the non-movant's claim . . . . [T]he nonmoving party must [then] come forward with admissible evidence sufficient to raise a genuine issue of fact for trial . . . ." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party . . . must come forward with evidence that would be sufficient to support a jury verdict in his favor.").

Summary judgment may be granted in cases alleging trademark infringement and counterfeiting. *Lang v. Ret. Living*

*Publ'g Co, Inc.*, 949 F. 2d 576 (2d Cir. 1990); *see also Coach Inc. v. Allen*, No. 11 Civ. 3590 (CM), 2012 U.S. Dist. LEXIS 100829, at *15-16 (July 19, 2012). Summary judgment in a trademark action is appropriate "where the undisputed evidence would lead only to one conclusion as to whether confusion is likely." M*edici Classics Prods. LLC v. Medici Group LLC*, 683 F. Supp. 2d 304, 308 (S.D.N.Y. 2010).


In order to prevail on a trademark infringement claim under the Lanham Act, a plaintiff must show that "(1) it has a valid, legally protectable trademark; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale or advertising of goods or services' ..., (5) without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005) (internal citations omitted); *Coach v. Allen*, 2012 U.S. Dist. LEXIS 100829, at * 16-17. Additionally, a plaintiff must show that the defendant's use of the mark is "likely to cause confusion as to the affiliation, connection, or associate of defendant with plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services or commercial activities by plaintiff." *1-800 Contacts*, 414 F.3d at 407.

36

**The Motion by Plaintiffs for Summary Judgment
of Trademark Counterfeiting and Infringement is Granted**

All of the Coach Registered Trademarks at issue are
valid trademarks and apply to the infringing products offered by
Defendants. The certificates of registration with the United
States Patent and Trademark Office constitute prima facie
evidence of the validity of the marks and Coach's exclusive
right to use the mark in connection with the goods specified in
the certificates. *See* 15 U.S.C. § 1057(b). Certain of the Coach
Registered Trademarks, as noted above, have been in use for more
than five (5) years and are incontestable. 15 U.S.C. § 1065.
These marks' incontestable status is evidence of the validity of
the registered mark and Coach's exclusive right to use the
registered marks. *See* 15 U.S.C. § 1115.

Plaintiffs contend that Defendants used fourteen (14)
Coach Registered Trademarks on six (6) types of goods in the
sale and offering for sale of counterfeit and infringing
merchandise for a total of twenty-four (24) separate
infringements.

The evidence provided by both parties has established
that the Defendants were offering for sale and selling

37

unauthorized products bearing counterfeits and infringements of
the Coach Registered Trademarks and that there is no genuine
issue of material fact as to this issue. In addition, these
marks were used in commerce in connection with the sale or
advertising of goods without Coach's consent. *See* 15 U.S.C. §
1127.

In the Second Circuit, courts generally determine
whether there is a likelihood of confusion as to the origin or
sponsorship of the defendant's goods by applying the eight-
factor test found in *Polaroid Corp. v. Polaroid Electronics
Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). *Fendi Adele S.R.L. v.
Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y.
2010). However, the Court need not perform the factual analysis
required by Polaroid when counterfeit marks are involved since
counterfeit marks are inherently confusing. *See id.*

The Lanham Act defines a "counterfeit" as a "spurious
mark which is identical with, or substantially indistinguishable
from, a registered mark." 15 U.S.C. § 1127. "[A]n allegedly
counterfeit mark must be compared with the registered mark as it
appears on actual merchandise to an average purchaser." *Colgate-
Palmolive Co. v. J.M.D. All-Star Import and Export, Inc.*, 486 F.
Supp. 2d 28, 289 (S.D.N.Y. 2007) (citing *Montres Rolex, S.A. v.*

*Snyder*, 718 F.2d 524, 533 (2d Cir. 19083)); *see also GTFM, Inc. v. Solid Clothing Inc.*, No. 01 Civ. 2629 (DLC), 2002 U.S. Dist. LEXIS 15422, at \*6 (S.D.N.Y. Aug. 22, 2002) ("There is nothing in the Act . . . which states that to determine whether a defendant is engaged in counterfeiting, one compares plaintiff's and defendant's marks in the abstract, without considering how they appear to consumers in the marketplace.").

There is no genuine issue for trial as to whether the Defendants sold Counterfeit Coach Merchandise. Defendants used marks that appear substantially indistinguishable, if not identical, to the Coach Registered Trademarks to average consumers in the marketplace. *See* Lau Decl. ¶¶ 33-35; *Coach, Inc. v. Horizon Trading USA Inc.*, 11 Civ. 3535 (PAE), 2012 U.S. Dist. LEXIS 160528, at \*15-18 (S.D.N.Y. Nov. 7, 2012) (finding Defendants' "GC" and "CC" marks counterfeit by analyzing the styling and finish of those marks on Defendants' merchandise). Moreover, Lin Weng admitted to affixing Coach labels to generic handbags, which was corroborated by Zhen Weng's testimony. *See* Lee Decl., Ex. 11, at 22; Ex. 13, at 37.

As concluded above, the Declarations are not permitted under the Federal Rules as properly sworn under the penalty of perjury. In addition, the probative value of both the

Declarations and Certifications are questionable in view of the
language problem presented.

The Defendants have contended that there is
insufficient evidence to establish that the merchandise
Defendants distributed was counterfeit. However, Coach has
produced evidence of counterfeiting, including pictures and
sworn declarations attesting to the counterfeit nature of the
Coach products seized from the Defendants' Store. Lau Decl. ¶¶
33-35, Exs. 5, 6. In addition, Defendants' deposition testimony
belie their current argument as Lin Weng admitted to affixing
Coach labels to handbags in his deposition. Several cease and
desist letters were also served on Defendants at the Defendants'
Store that notified Defendants of the counterfeit nature of
their merchandise. Lau Decl. Exs. 2, 4, 7. These letters were
signed by Lin Weng. *See id.*

Defendants contend that in order for the court to
determine summary judgment in a trademark counterfeiting case,
the court must determine whether the items at issue are
counterfeit and whether defendant sold those items. In support
of their position, Defendants cite *Gucci Am., Inc. v. Duty Free
Apparel, Ltd.*, 286 F. Supp. 2d 284 (S.D.N.Y. 2003), in which the
court granted summary judgment in Gucci's favor when a

declaration submitted by an employee of Gucci established that
the items were counterfeit. As in the *Gucci* case, testimony of
Coach's representative established that the merchandise sold at
the Defendants' Store is counterfeit. Coach's representative
examined and reviewed the goods and photographs of the goods in
question purchased from, seized from, and surrendered by
Defendants and testified that "none of its parts are of genuine
Coach origin," "the merchandise, which includes handbags,
wallets, and belts, contains numerous counterfeits and
infringements of the Coach Registered Trademarks," and "contains
marks that appear substantially indistinguishable, if not
identical, to the Coach Registered Trademarks to the average
consumers in the marketplace." Lau Decl. ¶¶ 33-34.

In the *Gucci* case cited by Defendants, the Court also
stated that "Defendants have produced no evidence, expert or
otherwise, that sufficiently refutes [Gucci's] findings" and
that with the evidence presented by the plaintiff's, "no
reasonable juror would fail to hold Defendants' liable." *Gucci*
286 F. Supp.2d at 288. The same reasoning applies here.
Defendants have not proffered any evidence that supports their
contention that the luxury goods they sold may have been genuine
and never requested to examine the merchandise, despite being
given the opportunity to do so.

41

Despite Defendants' contention advanced in opposition to Plaintiffs' motion regarding the genuineness of the merchandise, Defendants provided testimony that support the conclusion that the items they purchased and sold were Counterfeit Coach Merchandise. Zhen Weng testified that she witnessed her brother, defendant Lin Weng, attach Coach logos to handbags. Lin Weng also testified that after being arrested he admitted the bags were "problematic" but continued to sell them anyway. In response to interrogatories posed seeking information concerning the purchase and sale of counterfeit Coach merchandise, Defendants never objected by claiming that these items were genuine; instead, Defendants provided detailed responses indicating quantities and dates on which they admit to purchasing and selling such "Coach" products.

The only case that Defendants cite in support of their position that the arrests of the Defendants have no probative value is a 34-year old New York State case. *See Franco v. Zingarelli*, 72 A.D.2d 211, 216 (1st Dep't 1980). *Franco* is not applicable here, as *Franco* merely held, in a personal injury action, that proof of arrest may not serve as the basis for an inference of negligence. *Id.* Here, the evidence in the record regarding whether Defendants sold Counterfeit Coach Merchandise

is more voluminous than the Defendants' arrests. In addition to
the arrests, several cease and desist letters, notices from
their landlord, civil seizures, criminal enforcement actions,
voluntary surrenders, and preliminary injunctions were served or
placed on the Defendants, all of which provided the Defendants
with notice. Despite all of this, Defendants did not stop
selling Counterfeit Coach Merchandise. Given such, the
Defendants' actions evidence "willful" conduct. *See Bravado
Int'l Group Merch. Servs., Inc. v. Ninna*, 655 F. Supp. 2d 177,
191 (E.D.N.Y. 2009) (defining willful infringement as
"[k]nowledge that a Defendant's conduct represented infringement
or perhaps recklessly disregarded the possibility" (internal
citations omitted)); *Securacomm Consulting Inc. v. Securacom
Inc.*, 166 F.3d 182, 187 (3d Cir. 1999) (finding willful conduct
must include an "aura of indifference to plaintiffs rights or a
deliberate and unnecessary duplicating of a plaintiffs mark
. . . in a way that was calculated to appropriate otherwise
benefit from the goodwill the plaintiff has nurtured" (internal
quotation marks omitted)).

Although less involved in the operation of the
Defendants' Store than her children, Xiao Lin has not set forth
any admissible evidence to support her cross motion for summary
judgment. Further, Xiao Lin admitted to being arrested anywhere

from six (6) to twenty (20) times and conceded being arrested
numerous times in connection with Defendants' Store and in
connection with "watching" or selling handbags or other
merchandise at other Chinatown locations. *See* Lau Decl., Ex. 12,
at 14-24. On at least two (2) occasions, Xiao Lin was arrested
for offering for sale Counterfeit Coach Merchandise. During
these arrests, 201 pieces of Counterfeit Coach Merchandise were
seized from the Defendants.

Xiao Lin has also admitted to "helping out" at her
children's store, accepting money from and making sales to
customers, and distributing counterfeit product. *See*
"Certification of Xiao Fei Lin" ¶ 7.

Defendants' claim that Xiao Lin "had no idea about
Coach trademark (sic)" is not a defense to the claims asserted
herein. Pursuant to the Lanham Act, it does not matter whether a
person knows if the items they are distributing are counterfeit;
knowledge is not a prerequisite to assessing liability. *See*
*Cartier Int'l B.V. v. Ben-Menachem*, No. 06 Civ. 3917, 2007 U.S.
Dist. LEXIS 95366, at *31-*32 (S.D.N.Y. 2007) ("Since a seller
bears strict liability for violations of the Lanham Act, even an
'innocent' individual who sells goods bearing an infringing mark
is liable for trademark infringement -- intent is not

44

required."). Given such factors, Defendants' motion to dismiss the Complaint with respect to Xiao Lin is denied.

## The Plaintiffs Are Entitled to Statutory Damages

For purposes of calculating statutory damages, Coach seeks damages "per counterfeit mark per type of goods or services sold, offered for sale, or distributed. . . ." *See* 15 U.S.C. § 1117(c). Coach and other brands have previously been awarded statutory damages on a per trademark, per type of good counterfeited basis. *See Coach v. Allen*, 2012 U.S. Dist. LEXIS 100829, at * 21-22; *see also Gucci Am., Inc. v. Curveal Fashion*; No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831, at *9 (S.D.N.Y. Jan. 20, 2010) (awarding damages for infringement of fifteen types of goods for a total of $13,500,000). Damages per mark per type of good is appropriate here. Defendants infringed fourteen (14) marks on six (6) types of goods for a total of twenty-four (24) separate infringements.

Under the Lanham Act, a trademark owner may elect to recover, at any time before final judgment is rendered, an award for statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. 15 U.S.C. § 1117(c).

45

Recovery of statutory damages under the Lanham Act is appropriate. Section 1117(c) of the Lanham Act was created to give victims of trademark infringement and unfair competition an avenue for recovering damages when a defendant hides, alters, or destroys business records. *See* S. Rep. No. 104-177 § 7 (1995) (noting that "counterfeiters' records are frequently nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible"). When defendant's profits and plaintiff's losses are difficult to determine directly, the Court may assess trademark damages under 15 U.S.C. § 1117(c). *See*, *All-Star Mktg. Grp., LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011); *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781(CM)(AJP), 2009 WL 4432678, at *2 (S.D.N.Y. Dec. 4, 2009); *Louis Vuitton Malletier, S.A. v. LY USA*, No. 06 Civ. 13463(AKH), 2008 WL 5637161, at *1 (S.D.N.Y. Oct. 3, 2008); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, No. 03 CV 2132 GB D KNF, 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006).

Coach has requested statutory damages of $2,000,000 per mark, per good infringed, pursuant to 15 U.S.C. § 1117(c)

(up to $200,000 for non-willful infringement and $2,000,000 for willful infringement), citing the following awards:

| Case | Award Per Trademark | Number of Trademarks and Types of Good | Total Award |
|---|---|---|---|
| *Richemont Intl SA v. Chen*, No. 12-cv-6689 (WHP) (S.D.N.Y. Jan. 4, 2013) | $2,000,000 | 50 | $100,000,000 |
| *Burberry Ltd. v. Doe*, No. 12 Civ. 0479 (TPG) (S.D.N.Y. filed May 17, 2012) | Estimated at $197,628.46 | Estimated around 506 | $100,000,000 |
| *Burberry Ltd. v. Doe*, No. 11 Civ. 08306 (TPG) (S.D.N.Y. filed May 17, 2012) | Estimated at $158,102.75 | Estimated around 506 | $80,000,000 |
| *True Religion Apparel, Inc. v. Xiaokang Lei*, 11-cv-08242 (HB) (S.D.N.Y Mar. 12, 2012) | $2,000,000 | 432 | $863,900,000 |
| *Hermes Int'l v. Doe*, 12-cv-1623 (DLC) (S.D.N.Y. Apr. 30, 2012) | Estimated at $50,505.05 | Estimated around 198 | $100,000,000 |
| *Yahoo! Inc. v. XYZ Co.*, 08-Civ-4581 (LTS)(THK) (S.D.N.Y. Dec. 5, 2011) | $1,000,000 (conduct prior to 10/13/08) $2,000,000 (conduct after 10/13/08) | 18 (9 prior to 10/13/08 and 9 after 10/13/08) | $27,000,000 |
| *Coach, Inc. v. Leap*, No. 11-Civ-1985 (LBS) (S.D.N.Y. May 25, 2011) | $200,000 | 7 | $1,400,000 |
| *Coach, Inc. v. Allen*, No. 11-Civ-3590 (CM) (S.D.N.Y. July 19, 2012) | $2,000,000 | 17 | $44,000,000 |
| *Tory Burch LLC v. Yong Sheng Intl Trade Co.*, 10-Civ-9336 (SAB) (S.D.N.Y. May 13, 2011) | $2,000,000 | 2 | $4,000,000 |
| *Coach, Inc. v. Tirpak*, No. 10-Civ-6179 (PGG) (S.D.N.Y. | $111,111.12 | 9 | $1,000,000 |

| Dec. 7, 2010) | | | |
|---|---|---|---|
| *North Face Apparel Corp. v. Fujian Sharing Import &Export LTD. Co.*, 10-Civ-630(AKH)(S.D.N.Y. Sept. 13, 2010) | $2,000,000 | 39 | $78,000,000 |
| *Nike Inc. v. Top Brand Co.*, 00 Civ 8179, 2006 WL 2946472, at *2-3 (S.D.N.Y. Feb. 27, 2006) | $1,000,000 | 12 | $12,000,000 |
| *Gucci Am., Inc., v. Duty Free Apparel, Ltd.*, 315 F.Supp.2d 511, at 520-21 n. 8 (S.D.N.Y. A ri123, 2004) | $1,000,000 | 2 | $2,000,000 |
| *Phillip Morris USA, Inc. v. Marlboro Express*, No. CV-03-1161, 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2006) | $1,000,000 | 4 | $4,000,000 |

See also, *Coach Servs., Inc. v. Yoo*, 10-CV-02326, 2011 U.S. Dist. LEXIS 52482, at * 17 (C.D. Ca. May 6, 2011) (award of $1,000,000 for the infringement of one trademark).

The statute does not provide guidelines for courts to award statutory damages, but courts have looked to the analogous provision of the Copyright Act which gives the court wide discretion in determining the amount of damages to be awarded within the minimum and maximum values proscribed under the

48

Lanham Act. *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC*, 665 F.Supp.2d 434, 436-37 (S.D.N.Y. 2009); *Fitzgerald Publ'g. Co., Inc. v. Baylor Publ'g. Co., Inc.*, 807 F.2d 1110, 1116 (2d Cir. 1986); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991) (quoting *Harris v. Emus Records Corn.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (maximum statutory damages awarded)).

Presently, the statutory minimum and maximum are $1,000 and $2,000,000, respectively, for each counterfeit trademark. 15 U.S.C. § 1117(c) (up to $200,000 for non-willful infringement and $2,000,000 for willful infringement). In order to be awarded the statutory maximum of $2,000,000 per counterfeit trademark, the trademark owner must prove, and the court must find, that the defendant was willful in its acts of counterfeiting and infringement. 15 U.S.C. § 2227(c)(2).

Congress intended the statutory damages under 15 U.S.C. § 1117(c) to both compensate and deter. *See*, *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 CIV.9155 JGK AJP, 2002 WL 1226863 (S.D.N.Y. June 5, 2002); *Rolex Watch U.S.A., Inc. v. Jones*, No. 99 CIV. 2359(DLC)(FM), 2002 WL 596354 (S.D.N.Y. April 17, 2002) *Rolex Watch U.S.A., Inc. v. Replicastoreonline.webs.com*, 11 CV

01488 (LAP)(DF), 2013 U.S. Dist. Lexis 137100 (S.D.N.Y. July,

2013); *Rolex Watch U.S.A., Inc. v. Voiers*, 99 Civ. 11328

(NRB)(JCF), 2000 U.S. Dist. Lexis 22127 (S.D.N.Y. Aug. 10, 2000)

(even where defendant's conduct was brazen, in the absence of

evidence regarding profits, damages should be limited to what is

necessary to compensate and deter). However, statutory damages

may not afford plaintiff an unjustified windfall. *See*, *Rolex*

*Watch v. Replicastoreonline.webs.com*, 2013 U.S. Dist. Lexis

137100; *Rolex Watch v. Brown*, 2002 WL 1226863; *Rolex Watch v.*

*Jones*, 2002 WL 596354; *Rolex Watch v. Voiers*, 2000 U.S. Dist.

Lexis 22127. Therefore, "to the extent possible, statutory

damages should be woven out of the same bolt of cloth as actual

damages." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F.

Supp. 2d at 520 (internal citations and quotation marks

omitted).


"Courts determining damages pursuant to § 1117(c)(2)

have considered the following factors: (1) the expenses saved

and the profits reaped; (2) the revenues lost by the plaintiff;

(3) the value of the trademark; (4) the deterrent effect on

others besides the defendant; (5) whether the defendant's

conduct was innocent or willful; (6) whether a defendant has

cooperated in providing particular records from which to assess

the value of the infringing material produced; and (7) the

potential for discouraging the defendant." *All-Star Mktg. Grp.,
LLC v. Media Brands Co., Ltd.*, 775 F. Supp. 2d 613, 622
(S.D.N.Y. 2011) (quoting *Kenneth Jay Lane, Inc. v. Heavenly
Apparel, Inc.*, No. 03 CV 2132 GB D KNF, 2006 WL 728407 at *6;
*accord, e.g.*, *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807
F.2d 1110, 1117 (2d Cir. 1986).

Here, the Defendants offered merchandise bearing
counterfeits of the Coach Registered Trademarks for sale. The
fact that the goods being sold bore the marks that were
identical to established marks shows a purpose to trade upon
Coach's goodwill. *See Microsoft Corp. v. CMOS Tech., Inc.*, 872
F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to
imagine a clearer case of consumer confusion than the instant
case in which the defendants, acting in direct competition with
the plaintiff, sold counterfeit products on which plaintiff's
registered marks appear in their entirety."). The use of
identical marks establishes that the Defendants intended to
confuse consumers into believing that their counterfeit
merchandise was affiliated with or originated from Coach. *See
PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp.2d 1213,
1220 (S.D. Fla. 2004) ("[T]he Court infers from [d]efendants'
use of such a confusingly similar mark that [d]efendants had the

specific intent to confuse consumers into believing that [defendant] was affiliated with [plaintiff].").

In addition, Defendants destroyed relevant documents, and after delay, only produced minimal documents. Defendants did not provide any documents pertaining to their numerous arrests or records relating to their sales of Counterfeit Coach Merchandise. Due to Defendants' lack of cooperation and recordkeeping, the true breadth of Defendants' infringement of the Coach Registered Trademarks remains unknown. As such, statutory damages are particularly appropriate here. *See Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.*, 03 Civ. 2132(GBD)(KNF), 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) ("In crafting the statutory damages provision of the Lanham Act ... Congress took into account that oftentimes, counterfeiters records are nonexistent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible." (internal quotation marks omitted)).

Defendants' combined eight (8) arrests for sales of counterfeit merchandise at Defendants' Store, on top of additional arrests at different locations for the same conduct

together with the seizure of the counterfeit goods being offered for sale belie their defense of ignorance and innocence. Like being hanged, the prospect of repetitive arrest for the same conduct creates an acuity of thought to inquire into the cause for the arrests. To continue the conduct and to seek to conceal it rather than establishing innocence demonstrates the need for deterrence.

Although the conduct giving rise to this action was presumably profitable, the absence of Defendants' records leaves the amount unknown. The location, scale, and nature of the Defendants' enterprise militates against assessing maximum statutory damages, but deterrence is required. Under all these circumstances an award of $500,000 for the 24 infringements is appropriate.

**Plaintiffs Are Not Entitled to Costs At This Time**

Coach has requested for the costs and disbursements it has incurred in connection with this action. Awards of attorney fees for Trademark Act violations are appropriate in "exceptional cases" under § 1117(a) and for willful violations under § 1117(b), conditions that overlap significantly because "[t]he finding of willfulness determines the right to attorneys'

53

fees.... 'Exceptional' circumstances include willful infringement." *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir. 1995). *Accord Guess?, Inc. v. Gold Ctr. Jewelry, et al.,* 997 F. Supp. 409, 412 (S.D.N.Y.) ("Usually, the type of conduct that has sufficed to make out an 'exceptional case' is intentional, deliberate, or willful infringement." (quotation omitted)), *rev'd on other grounds,* 158 F.3d 631 (2d Cir. 1998); *Playboy Enter., Inc. v. Asiafocus Int'l, Inc., et al.,* No. Civ. A. 97-834-A, 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998) ("[D]efendant acted willfully and in bad faith in initiating and continuing their infringing activities despite notice from [plaintiff] and the commencement of this litigation. This case is therefore 'exceptional' . . . and warrants the award of attorneys fees."). "When willfulness has been established, courts consider the case to be 'exceptional' within the meaning of the statute and therefore award attorneys' fees." *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 505 (S.D.N.Y. 2009); *see also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) ("the finding of willfulness determines the right to attorneys' fees"); *Twin Peaks Prods. v. Publ'n Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993) (exceptional cases involve evidence of fraud or bad faith).

The principal damages to Coach is the cost of enforcement and the damages to its trademarks resulting from the Defendants' continued refusal to discontinue their conduct until the initiation of this action. However, "[i]n this Circuit, a party seeking such an award of attorneys' fees must support its request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 506 (S.D.N.Y. 2009) (quoting *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Fee applications that do not contain such supporting data are normally disallowed. *Id.* at 506 (internal quotation marks omitted). Coach has not submitted any such records for the instant action. As such, Coach's request for costs is denied at this time without prejudice.

## Defendants Are Permanently Enjoined From Future Infringement

A plaintiff is entitled to a permanent injunction under the Lanham Act "according to the principles of equity and upon such terms as the court may deem reasonable to prevent the violation of . . . [the Act]." 15 U.S.C. § 1116. In trademark infringement actions in this Circuit, a party seeking a permanent injunction must satisfy a four-factor test set forth

by the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.*, 547
U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), which was a
patent dispute:

> A plaintiff must demonstrate: (1) that it has suffered
> an irreparable injury; (2) that remedies available at
> law, such as monetary damages, are inadequate to
> compensate for that injury; (3) that, considering the
> balance of hardships between the plaintiff and
> defendant, a remedy in equity is warranted; and (4)
> that the public interest would not be disserved by a
> permanent injunction.

*Id.* at 391, 126 S.Ct. 1837; *accord Salinger v. Colting,* 607 F.3d
68, 77 (2d Cir. 2010). The Second Circuit panel in *Salinger*
noted that "*eBay* strongly indicates that the traditional
principles of equity [as embodied in the four-factor test] it
employed are the presumptive standard for injunctions in any
context." *Id.* at 78; *see also Fresh Del Monte Produce Inc. v.
Del Monte Foods Co.,* 933 F. Supp. 2d 655, 660 (S.D.N.Y. 2013).


"[T]he breach of a trademark license agreement usually
requires an injunction to prevent wrongful trademark use." *Id.*
(comparing *Gayle Martz, Inc. v. Sherpa Pet Grp.*, LLC, 651 F.
Supp. 2d 72, 84 (S.D.N.Y. 2009) (enjoining licensee from
infringing trademark by exceeding scope of license), with
*Shoney's, Inc. v. Schoenbaum*, 686 F. Supp. 554, 567–68 (E.D. Va.

56

1988) (enjoining trademark owner and licensor from breaching licensee's exclusive rights to trademark), *aff'd*, 894 F.2d 92 (4th Cir. 1990)). While the Defendants have ceased selling Counterfeit Coach Merchandise or any merchandise at all, injunctive relief is not moot here given the possibility that Defendants may open a new store. *See Allee v. Medrano*, 416 U.S. 802, 810-11, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants would be free to return to (their) old ways." (quotation marks omitted)).

Based on the conclusions set forth above, the four-factor test set forth in *eBay* weighs for an injunction. Plaintiffs have suffered an irreparable injury. *See CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co.*, Ltd., 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011)("[I]n a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." (internal citation omitted)). There is also no adequate remedy in law as Defendants were willful in their infringement of the Coach Registered Trademarks. *See id.*

at 42. The balance of hardships also weigh in favor of
Plaintiffs, given the very real possibility of the Defendants'
possible future infringement. Public interest would also not be
disserved by a permanent injunction, as an injunction would
prevent consumer confusion. Accordingly, Defendants are
permanently enjoined from future infringements of Coach
Registered Trademarks.

## Conclusion

Based on the conclusions set forth above, the motion of the Plaintiffs for summary judgment granting statutory damages for counterfeiting and infringement of the Coach trademark and permanent injunction is granted. Plaintiff's motion for costs is denied without prejudice. Defendants' motion for summary judgment is dismissed. Plaintiffs' motion to strike documents is dismissed as moot.

Settle judgment on notice.

It is so ordered.

Dated:      New York, New York
            June 7, 2014

Robert W. Sweet, U.S.D.J.